UNITED STATED DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **STAN SZRAJER**, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br>*Plaintiff,* <br><br>v. <br><br>**HALEON PLC, HALEON US HOLDINGS LLC (F/K/A GLAXOSMITHCLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC), AND HALEON US INC. (A/K/A GSK CONSUMER HEALTH, INC.,** <br><br>*Defendants.* | **Case No.:** <br><br>**Judge:** <br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Stan Szrajer, (hereinafter, "Plaintiff"), by and through his undersigned counsel, hereby brings this action on behalf of himself and all others similarly situated, against Defendants, Haleon Plc, Haleon US Holdings LLC (formerly known as GlaxoSmithKline Consumer Healthcare Holdings (US) LLC), and Haleon US Inc. (also known as GSK Consumer Health, Inc.), and states:

### INTRODUCTION

1.      This is an action for damages related to Defendants' wrongful conduct in connection with the marketing, distribution and sale of products containing phenylephrine – a purported decongestant used as an active ingredient in at least 250 products, including without limitation Sudafed Sinus Congestion, Tylenol Cold & Flu Severe, Nyquil Severe Cold & Flu, Theraflu Severe Cold Relief, Mucinex Sinus Max, and many others, including generic brands

1

developed by major retailers like CVS, Walmart, Target and Walgreens (the "Phenylephrine Products").

2. Defendants manufacture, test, promote, advertise, market, distribute and sell the Phenylephrine Products for the treatment of congestion and other associated cold and flu symptoms. Hundreds of millions of Americans, spend hard-earned money to purchase these products for help relieving congestion and other associated cold and flu symptoms because they are told by Defendants that they work for that very purpose.

3. For years, Defendants have advertised and marketed the Phenylephrine Products to unsuspecting consumers despite knowing that phenylephrine is ineffective for the treatment of nasal congestion and the other cold and flu symptoms for which Defendants promote its use. On or about September 12, 2023, the Federal Drug Administration, after careful study and consideration, announced publicly that phenylephrine is ineffective as a treatment for such symptoms.

4. As a proximate result of Defendants' deceptive, fraudulent, unlawful, and/or unfair conduct, Plaintiff and class members suffered hundreds of millions of dollars in damages in reliance upon Defendants' knowingly false representations about the effectiveness of phenylephrine and the Phenylephrine Products.

5. Plaintiff therefore demands judgment against Defendants and request, among other things, compensatory damages, statutory damages, punitive damages, attorneys' fees, costs and all other available remedies and damages allowed by law.

**PLAINTIFF**

6. At all relevant times, Plaintiff Stan Szrajer is a United States Citizen with a principal address located in Aurora, Illinois.

7. On numerous occasions within the statutory time period, in reliance upon Defendants' intentionally false and fraudulent marketing, Plaintiff purchased the Phenylephrine Products for the treatment of cold and flu symptoms.

## DEFENDANTS

8. Defendant Haleon Plc is a public limited liability company organized under the laws of England and Wales. Haleon Plc is a British multinational consumer healthcare company with its global headquarters located in Weybridge, England.

9. Defendant Haleon US Holdings LLC (formerly known as GlaxoSmithKline Consumer Healthcare Holdings (US) LLC) is a Delaware limited liability company with its headquarters and principal place of business in the State of Pennsylvania. Upon information and belief, GlaxoSmithKline Consumer Healthcare Holdings (US) LLC changed its legal entity name to Haleon US Holdings LLC in or around December 14, 2023.

10. Defendant Haleon US Inc. (also known as GSK Consumer Health, Inc.) is a Delaware limited liability company.

11. On information and belief, in or around July 2022, Haleon Plc acquired GSK Plc's consumer healthcare business and subsequently ownership was transferred and/or names were changed to the appropriate entities described above.

## JURISDICTION & VENUE

12. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000

and is a class action in which there are in excess of 100 class members and many members of the class are citizens of a state different from Defendants.

13. This Court has personal jurisdiction over Defendants are authorized to conduct and do conduct business in Illinois. Defendants have engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling the Phenylephrine Products to Plaintiff in Illinois, and Defendants have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through their promotion, sales, distribution and marketing within the State to render exercise of jurisdiction by this Court permissible.

14. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he resided in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because the Defendants transact substantial business in this District.

## PLAINTIFF SPECIFIC FACTUAL ALLEGATIONS

15. On numerous occasions within the statutory time period, in reliance upon Defendants' intentionally false and fraudulent marketing, Plaintiff purchased the Phenylephrine Products, specifically including, Theraflu branded products, of which contained phenylephrine, within the State of Illinois for the treatment of cold and flu symptoms.

16. Most recently, on or around December 5, 2023, Plaintiff purchased "Theraflu Severe Cold Relief Combo Pack" from his local grocery store in North Aurora, IL.

17. The product's label indicated that the product was suitable for treatment of "nose and sinus congestion", "sore throat", "cough", "fever" and "runny nose (nighttime only)."



18.     The label indicated that the product was "distributed by: GSK Consumer Healthcare."



---

[1] Photos were taken by Plaintiff on or around December 11, 2023.

19. Plaintiff purchased the product to treat symptoms of sinus pressure/congestion, sore throat, and other common cold and flu symptoms.

20. Plaintiff did not experience any relief from the product and therefore ceased taking the product.

## CLASS ACTION ALLEGATIONS

21. Pursuant to Rules 23(a), (b)(3), (b)(2), and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff bring this class action on their own behalf and on behalf of all other similarly situated consumers in the United States as members of the following proposed Nationwide class. The proposed Class is defined as follows:

    a. **Nationwide class:** During the fullest period allowed by law, all persons within the United States who purchased the Phenylephrine Products, or any of them, at any time and at any location (the "Class").

    b. Nationwide class members are referred herein as "Class Members."

    c. Like Plaintiff, all Class Members purchased the Phenylephrine Products based on the misrepresentations that said products were effective in the treatment of congestion and other associated cold and flu symptoms, and that such understanding was reasonable and was a material basis for the decision to purchase the Phenylephrine Products, which Defendants intended to foster through its various marketing activities in connection with the sale of the Phenylephrine Products.

22. Excluded from the Class and Subclass are assigned judges and members of their families within the first degree of consanguinity, Defendants, and their subsidiaries, affiliates, officers, and directors.

23. The requirements of Federal Rule of Civil Procedure 23 are satisfied for the Class.

24. The proposed Class are so numerous that individual joinder of all their members is impracticable because members of the Class number in the tens or hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but are objectively ascertainable and will be determined through appropriate discovery.

25. Defendants possess objective evidence as to the identity of each Class Member and, to a reasonable degree of certainty, the damages suffered by each Class Member, including without limitation sales receipts, phone numbers, names, rewards accounts data, credit card data, customer service complaint forms/emails/date, and other evidence which objectively identifies class members.

26. Class Members may be notified of the pendency of this action by mail, publication and/or through the records of Defendants and third-party retailers and vendors.

27. There are common questions of law and fact affecting Plaintiff and Class Members. Common legal and factual questions include, but are not limited to:

    a. Whether Defendants market and advertises the Phenylephrine Products in a way that is false or misleading.

    b. Whether by the misconduct set forth in this complaint, Defendants have engaged and continue to engage in unfair, fraudulent, or unlawful business practices;

    c. Whether Defendants' conduct was committed knowingly and/or intentionally;

    d.        Whether Defendants' conduct constitutes violations of the federal and/or state laws asserted herein;

    e.        Whether Defendants had a duty to correct their fraudulent statements;

    f.        Whether Class members were harmed by Defendants' false statements;

    g.        Whether Defendants were unjustly enriched by their conduct;

    h.        Whether the Class is entitled to punitive damages;

    i.        Whether the Class is entitled to recover statutory attorney's fees;

    j.        Whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

28. Plaintiff' claims are typical of the claims of the proposed Class and Subclass because Plaintiff and Class Members were harmed in the same manner by the same conduct.

29. Plaintiff and Class Members have all sustained economic injury arising out of Defendants violations of common and statutory law alleged herein.

30. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass.

31. Plaintiff' interests do not conflict with the interests of the Class and Subclass he seeks to represent. Plaintiff have retained counsel competent and experienced in prosecuting class actions, and Plaintiff intend to prosecute this action vigorously.

32. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members.

33. Given the relatively small amount of damages at stake for any of the individual Class Members, individual litigation is not practicable.

34. Individual Class Members will not wish to undertake the burden and expense of individual cases.

35. In addition, individualized litigation increases the delay and expense to all parties and multiplied the burden on the judicial system. Individualized ligation also presents the potential for inconsistent or contradictory judgments.

36. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

37. Questions of law and fact common to all Class Members predominate over any questions affecting only individual Class Members. Injuries sustained by Plaintiff and Class Members flow, in each instance, from a common nucleus of operative facts as set forth above.

38. In each case, Defendants used deceptive marketing and sales techniques aimed at the Class Members, causing harm to all Class Members as a result of such intentional conduct. The resolution of these central issues will be the focus of the litigation and predominate over any individual issues.

39. Proposed class counsel possesses the knowledge, experience, reputation, ability, skill, and resources to represent the class and should be appointed lead counsel for the class.

## TOLLING OF THE STATUTE OF LIMITATIONS

**A. Discovery Rule Tolling**

40. As a result of the acts and omissions of Defendants, Plaintiff could not have discovered, through the exercise of reasonable due diligence, that the active ingredient in the Phenylephrine Products was ineffective, as has now been declared by the Federal Drug

9

Administration. Thus, the applicable limitations periods did not begin to accrue until Plaintiff discovered, or through the exercise of reasonable diligence should have discovered, Defendants' wrongful acts and omissions.

### B. Fraudulent Concealment Tolling

41. All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and misrepresentations about the effectiveness of phenylephrine and the Phenylephrine Products throughout the time period relevant to this action.

42. Defendants are under a continuing duty to disclose the true character, quality, efficacy, safety issues and safety concerns of phenylephrine and the Phenylephrine Products to its users, including Plaintiff specifically. To date, Defendants have nevertheless failed to adequately and fully inform consumers about these matters, as discussed above.

43. Plaintiff reasonably relied upon Defendants' knowing, affirmative misrepresentations and/or active concealment when Plaintiff—and millions of similarly-situated Illinoisians and Americans—purchased the Phenylephrine Products based on the representations and advertisements touting the effectiveness of such products in the treatment of congestion and other associated cold and flu symptoms.

44. Because Defendants actively concealed the true facts about the ineffectiveness of phenylephrine and the Phenylephrine Products, they are estopped from relying on any statutes of limitations defense.

### FIRST CAUSE OF ACTION

### Fraudulent Misrepresentation

45. Plaintiff realleges and incorporates the allegations made above as if fully set forth below.

46. Plaintiff brings this claim individually and on behalf of the Class.

47. At all relevant times, Defendants had the duty and obligation to truthfully represent to Plaintiff the facts concerning the ineffectiveness of phenylephrine and the Phenylephrine Products. Instead, Defendants aggressively (and falsely) advertised the effectiveness of phenylephrine and the Phenylephrine Products, despite the fact that each such Defendant knew that phenylephrine and the Phenylephrine Products were entirely ineffective against congestion and the associated cold & flu symptoms the Phenylephrine Products were advertised to treat.

48. Defendants willfully deceived Plaintiff and the public in general by making these intentional misrepresentations regarding the efficacy of phenylephrine and the Phenylephrine Products.

49. At the time the aforesaid misrepresentations were made, Defendants intended to induce Plaintiff to rely upon such misrepresentations.

50. At the time Defendants made the above-described misrepresentations, Plaintiff and the public in general reasonably believed them to be true. In reasonable and justified reliance upon said misrepresentations, Plaintiff purchased the Phenylephrine Products.

51. As a direct and proximate result of Defendants' conduct, Plaintiff suffered serious financial harm, including the expenditure of substantial sums to purchase the Phenylephrine Products, which Defendants knew were and are ineffective for their advertised purpose.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

52. Plaintiff realleges and incorporates the allegations made above as if fully set forth below.

53. Plaintiff brings this claim individually and on behalf of the Class.

54. At all relevant times, Defendants had the duty and obligation to truthfully represent to Plaintiff the facts concerning the ineffectiveness of phenylephrine and the Phenylephrine Products. Instead, Defendants aggressively (and falsely) advertised the effectiveness of phenylephrine and the Phenylephrine Products, despite the fact that each such Defendant should have known that phenylephrine and the Phenylephrine Products were entirely ineffective against congestion and the associated cold & flu symptoms the Phenylephrine Products were advertised to treat.

55. Defendants recklessly or at least negligently deceived Plaintiff and the public in general by making these misrepresentations regarding the efficacy of phenylephrine and the Phenylephrine Products.

56. At the time the aforesaid misrepresentations were made, Defendants understood that their careless misrepresentations would induce Plaintiff to rely upon them.

57. At the time Defendants made the above-described misrepresentations, Plaintiff and the public in general reasonably believed them to be true. In reasonable and justified reliance upon said misrepresentations, Plaintiff purchased the Phenylephrine Products.

58. As a direct and proximate result of Defendants' conduct, Plaintiff suffered serious financial harm, including the expenditure of substantial sums to purchase the Phenylephrine Products, which Defendants knew or should have known were and are ineffective for their advertised purpose.

## THIRD CAUSE OF ACTION

### Breach of Express Warranty

59. Plaintiff realleges and incorporates the allegations made above as if fully set forth below.

60. Plaintiff bring this claim individually and on behalf of the Class.

61. Section 2-313 of the Uniform Commercial Code provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

62. At all times, Illinois and other states have codified and adopted the provisions of the Uniform Commercial Code governing the express warranty of merchantability.

63. Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased the Phenylephrine Products. The terms of that contract include the cognitive health benefit promises and affirmations of fact made by Defendants on the Phenylephrine Products' labels and packages as described above. These representations constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendants on the other.

64. All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class Members.

65. At all relevant times, Defendants had the duty and obligation to truthfully represent to Plaintiff the facts concerning the ineffectiveness of phenylephrine and the Phenylephrine Products. Instead, Defendants aggressively (and falsely) advertised the effectiveness of phenylephrine and the Phenylephrine Products, despite the fact that each such Defendant knew that phenylephrine and the Phenylephrine Products were entirely ineffective against congestion and the associated cold & flu symptoms the Phenylephrine Products were advertised to treat.

13

66. Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the Phenylephrine Products that could provide the cognitive health benefits as represented and described above.

67. As a result of Defendants' breach of their warranty, Plaintiff and the Class have been damaged in the amount of the purchase price of the Phenylephrine Products they purchased.

## FOURTH CAUSE OF ACTION

### Strict Liability-Design and Manufacturing Defect

68. Plaintiff realleges and incorporates the allegations made above as if fully set forth below.

69. Plaintiff brings this claim individually and on behalf of the Class.

70. At the time that the Phenylephrine Products left the control of the Defendants, the Phenylephrine Products were defective as a result of Defendants' design, manufacture, alteration, or modification. The defects included, but are not limited to, materials that are unsafe for human skin contact, and/or materials not identified on the Product itself.

71. At all relevant times, Defendants knew and intended that the Phenylephrine Products would be purchased and used by members of the general public who would rely on Defendants to properly identify the relevant characteristics and usefulness of the Product.

72. At the time of the incidents giving rise to this Complaint, the Phenylephrine Products were being used in a manner that was foreseeable by the Defendants and in a manner which the Phenylephrine Products were intended to be used.

73. Defendants knew or should have known their manufacture or design of the Phenylephrine Products was defective, causing the Phenylephrine Products to fail to perform as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

74. In addition, the risks inherent in the design of the Phenylephrine Products outweighs any benefits of that design.

75. As a direct and proximate result of Defendants' conduct, Plaintiff have suffered and continue to suffer serious harm.

### Additional Allegations Regarding Punitive Damages

### (All Applicable Causes of Action)

76. The acts and omissions of Defendants described herein consisted of oppression, fraud, and/or malice and were done with advance knowledge, conscious disregard of the rights of others and/or ratification by Defendants' officers, directors, and/or managing agents.

77. Defendants' actions amounted to actual malice or reckless indifference to the likelihood of harm associated with their acts and omissions.

78. Plaintiff is entitled to punitive damages because Defendants misled, misrepresented, and/or withheld information and materials from consumers and the public at large, including Plaintiff, concerning the efficacy of phenylephrine and the Phenylephrine Products.

79. Despite the fact that Defendants were or should have been in possession of evidence demonstrating the ineffectiveness of phenylephrine and the Phenylephrine Products, Defendants continued to market Phenylephrine Products by providing false and misleading information with regard to the efficacy of such products.

80. Defendants failed to provide consumers, including Plaintiff, with available materials, information, and warning that would have ultimately dissuaded him from purchasing and consuming such products, thus depriving otherwise uninformed consumers from weighing the true risks and benefits of purchasing and ingesting the Phenylephrine Products.

81. Defendants' conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

82. Consequently, Defendants are liable for punitive damages in an amount to be determined by the jury at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a. Certifying the Class as requested herein;

b. Awarding Plaintiff and the proposed Class Members damages;

c. Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class Members;

d. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

e. Ordering Defendants to engage in a corrective advertising campaign;

f. Awarding punitive damages;

g. Awarding restitutionary disgorgement in favor of Plaintiff and all other similarly situated persons;

h. Awarding the costs and expenses of this litigation to Plaintiff;

i. Awarding reasonable attorneys' fees and costs to Plaintiff as provided by law;

j. Awarding pre-judgment and post-judgment interest to Plaintiff; and

    k.  For such further relief as this Court deems necessary, just, and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: <u>January 19, 2024</u> | By: <u>Elizabeth C. Chavez, Esq.</u> |

Elizabeth C. Chavez, Esq. (6323726)
Bret K. Pufahl, Esq. (6325814)
Kathleen C. Chavez, Esq. (6255735)
Robert Foote, Esq. (3124325)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
1541 East Fabyan Parkway, Suite 101
Geneva, IL 60134
Tel. No.: (630) 232-7450
Fax No.: (630) 232-7452
Email: ecc@fmcolaw.com
        bkp@fmcolaw.com
        kcc@fmcolaw.com
        rmf@fmcolaw.com

COUNSEL FOR THE PLAINTIFF AND THE PUTATIVE CLASS